**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DREW ALLEN CALDWELL,

             *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

             *Defendant*.

_____/

CASE NO. 15-13015

DISTRICT JUDGE LAURIE J. MICHELSON

MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (Docs. 19, 20)**

**I.    RECOMMENDATION**

      In light of the entire record in this case, I suggest that substantial evidence
supports the Commissioner's determination that Caldwell is not disabled. Accordingly,
**IT IS RECOMMENDED** that Caldwell's Motion for Summary Judgment (Doc. 19) be
**DENIED**, that the Commissioner's Motion for Summary Judgment (Doc. 20) be
**GRANTED**, and that this case be **AFFIRMED**.

**II.    REPORT**

      **A.    Introduction and Procedural History**

      Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of
Reference, this case was referred to the undersigned magistrate judge for the purpose of
reviewing a final decision by the Commissioner of Social Security ("Commissioner")
denying Plaintiff's claim Disability Insurance Benefits ("DIB") under Title II of the
Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq*., and Supplemental Security

Income ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq*. (Doc. 4; Tr. 1-11). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 19, 20).

Plaintiff Drew Caldwell was fifty-one years old as of July 11, 2014, the date of the ALJ's decision. (Tr. 15, 188). His applications for benefits were initially denied on January 2, 2013. (Tr. 82, 101). Caldwell requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Henry Kramzyk on December 9, 2013, and again on April 28, 2014. (Tr. 31-81). Caldwell testified alone at the earlier hearing, and testified with the aid of attorney Linda Perkins-Moore at the latter hearing. (Tr. 31, 39). Vocational expert ("VE") Timothy Shaner appeared at the first hearing, and VE Cheryl Holseth testified at the second hearing. (*Id*.). On July 11, 2014, the ALJ issued a written decision in which he found Caldwell not disabled. (Tr. 15-26). On July 13, 2015, the Appeals Council, after considering additional exhibits, denied review.[1] (Tr. 1-11). Caldwell filed for judicial review of that final decision on August 25, 2015. (Doc. 1). Caldwell is proceeding in this matter *pro se* and *in forma pauperis*. (Doc. 5).

### B.   Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the Court can consider only that evidence presented to the ALJ. In other words, Caldwell's Appeals Council evidence may not be considered for the purpose of substantial evidence review. (Tr. 7, 318-19).

restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

3

expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if

4

the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least 18 years old and has a disability that began before age 22 (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Caldwell not disabled under the Act. (Tr. 26). The ALJ found at Step One that Caldwell had not engaged in substantial gainful activity following the alleged onset date, May 1, 2012. (Tr. 20). At Step Two, the ALJ concluded that Caldwell had the following severe impairments: "lumbar spine degenerative disc disease and diabetes mellitus." (Tr. 21). At Step Three, the ALJ found that Caldwell's combination of impairments did not meet or equal one of

5

the listed impairments. (Tr. 21). The ALJ then found that Caldwell had the residual functional capacity ("RFC") to perform light work, with additional limitations as follows:

> He can sit and stand and/or walk six hours each in an eight-hour workday. He can never kneel, crawl, or climb ladders, ropes or scaffolds. He can occasionally balance, stoop, crouch, and climb ramps or stairs. He needs to avoid concentrated exposure to wetness including wet, slippery, uneven surfaces. He needs to avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery.

(Tr. 21). At Step Four, the ALJ found that Caldwell could not return to any past relevant work. (Tr. 24). At Step Five, the ALJ concluded that Caldwell retained the ability to perform work which exists in significant numbers in the national economy. (Tr. 25).

### E.    Administrative Record

### 1.    Degree of Review in Non-Briefed Social Security Cases

Caldwell is proceeding *pro se* in this matter, and has not filed a brief in support of his motion for summary judgment. Caldwell instead merely asserts that he "request[s] a motion for summary Judgement [sic] in the above case against the Commissioner," and that he has "submitted all documentation from doctors reporting that [he is] unable to work" as the result of disability. (Doc. 19). Caldwell notes that he is "currently in a leg brace hand brace and awaiting surgery for [his] knee due to degenerative knee cartlidge [sic] loss which causes so much pain for [him] to walk and stand." (*Id.*). He also notes that he is "truly in hardship due to this matter of not receiving [his] benefits." (*Id.*).

6

While Caldwell has filed what he terms a motion for summary judgment, he has not submitted a brief supporting that motion, leaving the Court without guidance as to what errors he believes were made by the ALJ.

Some judges in this district have found that a "plaintiff in a Social Security disability benefits case . . . has no burden to do anything in order to obtain judicial review of the administrative decision except file a timely complaint." *Wright v. Comm'r of Soc. Sec.*, No. 09-CV-15014, 2010 WL 5420990, at *1 (E.D. Mich. Dec. 27, 2010). *Wright* looked to 42 U.S.C. § 405(g), which provides that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remand." *Id.* at *2. Citing a Northern District of Ohio decision issued in 1983, *Wright* concluded that "[o]nce the complaint and a copy of the record are filed, the Court has before it all that is necessary to enter a judgment on the merits." *Id.* (citing *Kenney v. Heckler*, 577 F. Supp. 214 (N.D. Ohio 1983)).

Applying the policy announced in *Wright* requires that the courts operate as both advocate and adjudicator, finding potential claims on behalf of the plaintiff and resolving them. Yet *Wright* did not establish whether courts ought to apply a circumscribed form of review. Courts must liberally construe arguments raised by *pro se* litigants, but "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001); *see also Wells v. Brown*, 891 F.2d 591,

7

594 (6th Cir. 1989) ("Neither [the Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits.").

It would be entirely inappropriate for the Court to provide the same level of analysis to Social Security benefits claimants who do provide briefs in support of their claims and those who do not. That practice would turn the adversarial judicial system on its head, converting the courts into advocate for claimants and opponent to the Commissioner, thereby compromising the Court's role as impartial adjudicator. Moreover, such a practice would undermine the important role played by Social Security benefits attorneys, who discover meritorious claims for remand and present them to the courts. Granting exhaustive review to non-briefed claims for remand would also vitiate the waiver principle, which provides that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)); *Moody v. Astrue*, No. 2:10-CV-0084, 2011 WL 335863, at *1 (S.D. Ohio Jan. 31, 2011) ("[T]he failure to file a brief at all is a waiver of any issue which might require reversal of the administrative decision.").

Providing exhaustive review to non-briefed claims would also create a perverse incentive for Social Security claimants to abstain from arguing in support of their claim. It would prove difficult for disability advocates to compete with a free, court-as-advocate service, given that a judge knows best what sort of arguments he or she finds most

8

persuasive. Should the knowledge of this practice become widespread, Social Security benefits appeals would become increasingly taxing on the courts.

The Sixth Circuit has not opined on the degree of review due to non-briefed benefits claims, but there is precedent for reversing the Commissioner's decisions where they are grossly deficient, even where the claimant fails to raise the issue prompting remand. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) ("Admittedly, Reynolds did not raise this specific objection to the decision below, and generally arguments not raised are abandoned. However, this rule is prudential and not jurisdictional . . . and the requirement for specific objections may be excused in the interest of justice.") (quotation omitted); *Carson v. Barnhart*, 140 F. App'x 29, 39 (10th Cir. 2005) ("Ordinarily, we will not consider an argument raised for the first time on appeal . . . . This rule is not without exceptions, however, and in unusual circumstances we will exercise our discretion to consider an argument not raised in the district court . . . . The argument Mr. Carson raises is purely a legal one, and its resolution is clear."); *Truesdale v. Colvin*, No. CIV-12-1307-HE, 2014 WL 549377, at *4 (W.D. Okla. Feb. 11, 2014) (remanding "in the interests of justice" based on an argument that the claimant did not raise).

Some courts have concluded that review of a non-briefed benefits claim should be limited to identifying "obvious errors" in the Commissioner's decision. *Crist v. Comm'r of Soc. Sec.*, No. 13-CV-14008, 2014 WL 2931412, at *2 (E.D. Mich. June 27, 2014) (Michelson, J.). The Commissioner's failure to obtain an expert medical opinion on

9

whether the claimant's physical impairments equal a listed impairment has frequently been found to constitute an obvious error requiring remand. *See id.*; *Ostrander v. Comm'r of Soc. Sec.*, No. 14-13151, 2016 WL 2754906, at *3 (E.D. Mich. Apr. 5, 2016); *Brown v. Comm'r of Soc. Sec.*, No. 12-14057, 2014 WL 222760, at *13 (E.D. Mich. Jan. 21, 2014).

One decision suggested that an error is "obvious" when it is "impossible to determine whether substantial evidence supports the ALJ's analysis without th[at] analysis," thus "a Plaintiff cannot waive . . . by not raising" an argument relating to the ALJ's failure to determine whether the claimant met a listing. *Beden v. Comm'r of Soc. Sec.*, No. 214CV14727MAGPTM, 2015 WL 5965006, at *12 (E.D. Mich. Sept. 18, 2015) report and recommendation adopted, No. CV14-CV-14727, 2015 WL 5936324 (E.D. Mich. Oct. 13, 2015).

The precise method for reviewing non-briefed Social Security appeals remains to be determined by the Sixth Circuit, but for the time being the "obvious error" standard provides sufficient guidance to review the instant matter.

## 1.    Medical Evidence

The medical evidence submitted by Caldwell is very limited in scope. In April 2012 Caldwell underwent a consultative examination at the behest of the Commissioner. (Tr. 279). He complained of a history of hypertension and diabetes, but without any hospitalizations. (*Id.*). Dr. Bina Shaw found no abnormality amongst any of Caldwell's bodily systems, full range of motion in all joints, including the cervical and thoracolumbar spine, no sacroiliac joint pain, no spasms in the paraspinal muscles, and no

10

midline spine tenderness. (Tr. 280, 282-83). Likewise, Caldwell showed no limp, had a steady gait, and did not use a cane. (*Id*.). Dr. Shaw diagnosed him with hypertension and diabetes, and found that he could work eight hours daily, lift "at least 20 pounds of weight without difficulty," and should avoid climbing and machinery operation. (Tr. 281). He could perform all tested physical abilities, including bending, carrying, picking up coins, and walking on heels. (Tr. 284).

In August 2012 Caldwell treated with Dr. Jamie Hall, who diagnosed benign hypertension, diabetes, hyperlipidemia, and insomnia. (Tr. 287). He reported being in no acute distress at that time, and had zero pain. (Tr. 286).

In March 2013 Caldwell underwent another consultative examination, this time with Dr. Cynthia Shelby-Lane. (Tr. 289-98). Caldwell complained of paresthesia of the feet and hands, arthritis of the legs, and back pain. (Tr. 289). He complained that his pain was worsened by standing, stooping, squatting, lifting, bending, pushing, pulling, reaching, and climbing. (*Id*.). Dr. Shelby-Lane noted "[n]o obvious spinal deformity, swelling or muscle spasms," but found that Caldwell limped slightly on the left, could walk on heels and toes slowly, and could squat seventy percent of the full range. (Tr. 291). Dr. Shelby-Lane diagnosed diabetes, hypertension, hyperlipidemia, arthritis, and chronic back pain. (*Id*.). Caldwell's flexibility was normal in all joints. (Tr. 294-95). He was able to perform all tested abilities. (Tr. 296). Dr. Shelby-Lane concluded by noting that "[b]ased upon the history and exam, the examinee has chronic medical conditions for which he will need long-term ongoing care. He may have difficulty with prolonged

standing, stooping, squatting, lifting and bending and he does use a cane for balance and support and has a slight limp on the left side." (Tr. 291).

An MRI also taken in March 2013 was interpreted to show "[m]inimal spondylolisthesis of L4 over L5," along with "degenerative osteoarthritic changes of the lumbar spine," and "[n]arrowing and sclerotic changes of the intervertebral disc space at L5-S1." (Tr. 293).

In November 2013 Caldwell treated with Dr. Hall, who diagnosed benign hypertension, diabetes, generalized osteoarthritis, malaise and fatigue, sexual dysfunction, and unspecified disorders of the teeth. (Tr. 316). He was prescribed a series of medications to treat these maladies, including aspirin and Tramadol for the treatment of pain. (Tr. 316-17). Once again he reported being in no acute distress, and apparently stated that his pain was "0" on a scale of "1-10." (Tr. 315).

This comprises the totality of Caldwell's medical evidence.

### 2.    Application Reports and Administrative Hearing

### a.    Caldwell's Function Report

Caldwell completed a function report on February 12, 2013, in which he asserted that he "can't stand long, [has] dizzy spells, backack [sic], legs hirt [sic], feet hirt [sic], hands hirt [sic]." (Tr. 235). His daily activities included only "sit watch t.v." (Tr. 236). His conditions prevented him from working, playing sports, and walking long distances. (Tr. 236). He reported that his sleep was interrupted by "toss + turn alnight [sic]." (Tr. 236). In terms of personal care, he indicated that he had "no problem," but also wrote that

12

he had difficulty tying his shoes. (*Id*.). He prepared frozen dinners daily, which took "a little time." (Tr. 237). He performed no chores because of his dizzy spells and other conditions. (Tr. 237-38). He left home once daily, could ride in cars, and shopped in stores monthly. (Tr. 238). His sole hobby was watching television. (Tr. 239). He spoke with others on the phone daily. (Tr. 239).

Caldwell wrote that he "can't walk or run far," and experienced limitations to all exertional tasks, along with seeing, concentrating, and using his hands. (Tr. 240). He could lift only five pounds and walk one block. (*Id*.). On the same page, Caldwell also asserts in a contradictory fashion that he could walk only as far as his porch, and required a five minute rest thereafter. (*Id*.). His blood pressure medication caused dizziness. (Tr. 242).

### b.       Caldwell's Testimony at the Administrative Hearing

At the December 9, 2013, hearing before the ALJ, Caldwell appeared without an attorney or other representative. (Tr. 34-35). After being told of his right to obtain a representative, he decided to obtain representation; the hearing was adjourned. (Tr. 37-38).

At the April 28, 2014, hearing before the ALJ, Caldwell testified that he had five children but lived alone. (Tr. 44). His home had both a basement and a second floor. (Tr. 45). He worked part time as a greeter at a dollar store, lifted no weight in that position, and worked for twenty or fewer hours per week. (Tr. 45-47). His work kept him on his feet constantly, but he was able to take a break every thirty minutes. (Tr. 48). He testified

13

that his last full time job ended in 2010, when he was no longer able to keep up with the work due to his declining health. (Tr. 48). In 2011 he worked as a parts assembler in the automotive industry, working for just under forty hours per week; that job kept him on his feet constantly, but he was able to lean on the conveyor belt. (Tr. 49-50). His full time work prior to 2010 involved unloading trucks, driving a forklift, spray painting parts, lifting parts weighing up to fifty pounds, and washing parts; he sat for six to seven hours daily in the forklift, and was otherwise on his feet. (Tr. 52-54).

Caldwell asserted that he was unable to work because of difficulty holding objects; standing; pain in his feet, legs, and joints; numbness throughout his hands and legs; and an inability to stretch or bend. (Tr. 58-59). He asserted that his pain was so severe that "if there was a scale, it would be above the scale;" on a one to ten scale, his pain would go to "11." (Tr. 59). The pain came and went, but did not have a trigger. (Tr. 59).

Caldwell alleged that his medications caused "[d]izziness, swelling, a sweat, nausea[]." (Tr. 61). Caldwell was not in physical therapy. (*Id.*). The heaviest object he could lift was "a small bag of flour," and he could not lift a gallon of milk, but could "maybe" lift a half gallon. (Tr. 62). He could walk only "10 or 20 steps" before requiring a rest. (*Id.*). He could stand or sit for thirty minutes, could "barely" bend over, and could not squat. (*Id.*). He experienced "numbness at the tip of [his] fingers at all times," and could thus not grip or manipulate objects. (*Id.*). Attempting to grasp objects without looking would result in the object "actually slip[ping] and almost slip[ping] out of [his] hands." (Tr. 69).

14

Despite living alone, Caldwell testified that he did not vacuum, sweep, or do the dishes. (Tr. 63). His family members did most of his laundry for him. (*Id*.). His sister paid his utility bills on his behalf. (Tr. 64). Caldwell required assistance getting into and out of the tub and tying his shoes. (*Id*.). He did not participate in any hobbies, did not go out to eat, did not have pets, did not go shopping, and did not perform chores in the yard. (Tr. 65-66). He attended church once every two months. (Tr. 66). He denied use of alcohol or illegal drugs. (Tr. 67). Caldwell found himself waking up about five times per night. (Tr. 69-70).

### c.    The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of a VE to determine Caldwell's ability to perform work. (Tr. 72). The VE found that Caldwell's past relevant work as a motor vehicle assembler was performed at the light level of exertion, and was unskilled. (Tr. 74). His work as a forklift driver was semi-skilled and was performed at the medium level of exertion. (*Id*.). His machine feeder position was medium, and his spot-welding position was sedentary. (*Id*.). The VE found that Caldwell's skills gained as a forklift operator were not transferable to other work. (Tr. 75).

The ALJ asked the VE to assume a hypothetical individual with Caldwell's age, education, and work experience, and who could perform work at the light level of exertion; who could sit, stand, or walk for up to six of eight work hours; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, crouch; never crawl; avoid concentrated exposure to wetness, including wet,

15

slippery, uneven surfaces; avoid concentrated exposure to hazards like dangerous machinery and unprotected heights. (Tr. 75-76). The VE found that such a worker could perform Caldwell's past relevant work as a spot welder and machine feeder as performed at the sedentary level. (Tr. 76). The ALJ then inquired whether the addition of a restriction to avoid concentrated exposure to hazards such as dangerous machinery would limit the availability of work. (Tr. 76). The VE found that this restriction would not impact the worker's ability to perform the previously identified jobs. (Tr. 77).

The VE also found that such a worker could perform jobs as a housekeeper (300,000 jobs nationally), hand packager (100,000 jobs), and cafeteria attendant (102,000 jobs). (Tr. 77).

The ALJ then added further restrictions to the first hypothetical, including that the worker would be able to lift, carry, push, and pull up to ten pounds occasionally and lesser weights frequently; sit for up to six hours daily and stand or walk for only two hours daily, *i.e.* sedentary work. (Tr. 78). The VE found that the machine feeder and spot welder positions would remain available as performed, but found that no other work would be available because the hypothetical worker was over fifty and had no transferable skills. (*Id.*).

In a third hypothetical, the ALJ asked whether a worker who experienced the combined limitations from the first two hypotheticals, and who was further unable to maintain regular attendance and be punctual within customary tolerances and could not

16

perform activities within a schedule would be able to perform work; the VE found that these limitations would be work-preclusive. (Tr. 79-80).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

18

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Caldwell v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Caldwell v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

19

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

20

> (v)   Treatment, other than medication, . . . received for relief of . . . pain;
> (vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

## G.   Analysis

As noted above, Caldwell has not submitted a brief in support of his motion for summary judgment, and has presented no arguments in favor of his claim. The Court will thus review the record for obvious errors.

21

As noted above, courts applying the "obvious error" standard have frequently remanded for further proceedings where the ALJ failed to render a proper finding at Step Three. *See, e.g.*, *Crist*, No. 13-CV-14008, 2014 WL 2931412, at *2; *Ostrander*, No. 14-13151, 2016 WL 2754906, at *3; *Brown*, No. 12-14057, 2014 WL 222760, at *13. At Step Three, the ALJ must determine whether the claimant meets or equals an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart B, Appendix 1. The ALJ may determine whether the claimant meets a listing without seeking input from a medical expert, but must seek an expert opinion when determining whether a claimant's conditions medically equal a listed impairment. *See Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Krawczak v. Comm'r of Soc. Sec.*, No. 14-11281, 2016 WL 1178753, at *4 (E.D. Mich. Feb. 26, 2016) ("SSR 96–6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter."), report and recommendation adopted, No. 14-11281, 2016 WL 1170778 (E.D. Mich. Mar. 25, 2016). "This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form." *Osley v. Comm'r of Soc. Sec.*, No. 12-12279, 2013 WL 3456963, at *10 (E.D. Mich. July 9, 2013).

The Disability Determination Transmittal in this case, dated April 11, 2013, bears the signature of Dr. Shahida Mohiuddin. (Tr. 101, 102). The Disability Determination

Explanation provides that Listings 1.04 and 4.04, relating to spine disorders and heart disease, were considered, and likewise bears the signature of Dr. Mohiuddin. (Tr. 87, 90, 96, 98-99). While the ALJ did not explicitly assert in the decision that his Step Three finding was based on Dr. Mohiuddin's report, that physician's signature on the Disability Determination Transmittal is sufficient support for the ALJ's finding. (Tr. 21). Remand is thus not appropriate as to the ALJ's Step Three finding.

Having reviewed the most common area of remand in non-briefed cases, I now turn to an overview of the remaining portions of the ALJ's decision. Based on the medical record, the ALJ determined that Caldwell could perform light work with additional restrictions, which is to say that he could

> lift, carry, push and pull twenty pounds occasionally and ten pounds frequently. He can sit and stand and/or walk six hours each in an eight-hour workday. He can never kneel, crawl, or climb ladders, ropes or scaffolds. He can occasionally balance, stoop, crouch, and climb ramps or stairs. He needs to avoid concentrated exposure to wetness including wet, slippery, uneven surfaces. He needs to avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery.

(Tr. 21). This RFC finding properly accommodates Caldwell's physical limitations as supported by the medical record, and may even overcompensate for Caldwell's supportable limitations. The ALJ noted that Caldwell denied joint pain and was in no acute distress in August 2012. (Tr. 22). Likewise he was in no distress in March 2013, along with no muscle atrophy, no muscle spasms, and intact motor and sensory function. (Tr. 22-23). He had a normal range of motion in his spine and extremities, could squat to seventy percent of the normal depth, and could perform all tested abilities. (Tr. 23). The

ALJ also made note of Dr. Shelby-Lane's finding that Caldwell experienced degenerative disc disease, and may have some difficulty with prolonged standing, stooping, squatting, lifting, and bending. (*Id.*). He was again in no distress during his November 2013 examination, and had intact sensation, full range of motion in the cervical spine, slightly decreased grip strength, normal reflexes, and normal sensation. (*Id.*). The ALJ compared these findings to the report drafted by state agency reviewing physician Dr. Mohiuddin, who concluded that Caldwell could perform a full range of work at the medium level of exertion. (*Id.*).

The Court notes that the ALJ accorded "some weight" to Dr. Shelby-Lane's opinion. (Tr. 23). He found that Dr. Shelby-Lane qualified her opinion by noting that Caldwell "may" experience limitations to certain postural and exertional activities, thereby undercutting its explanatory value. (*Id.*). This is a sufficiently good reason to justify the ALJ's assignment of weight, and satisfies his obligation under 20 C.F.R. § 404.1527(c)(2). *See Pugh v. Comm'r of Soc. Sec.*, No. 1:13-CV-02430, 2015 WL 419000, at *14 (N.D. Ohio Feb. 2, 2015) ("In light of her qualified opinion, the ALJ's decision to discount the opinion based on its vagueness is sufficiently clear and supported by the evidence.").

The ALJ does not specifically discuss Dr. Shelby-Lane's conclusion that "the examinee has chronic medical conditions for which he will need long-term ongoing care" (Tr. 291), but requiring long-term care is not synonymous with being disabled. Even if it were intended to be considered the equivalent of being disabled, that decision is reserved

24

to the Commissioner and would be due no weight. *See Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008). Moreover, Dr. Shelby-Lane's examination notes reveal symptoms that do not rise to the level of disability, e.g., no spinal deformity, swelling, or muscle spasms, normal flexibility in all joints, and the ability to perform all tested abilities. (Tr. 294-96).

The ALJ does not reference the April 2012 findings of Dr. Shaw, but they fully support the ALJ's decision. Dr. Shaw found that Caldwell suffered from hypertension and diabetes, without any other significant abnormalities, and that he was able to lift at least twenty pounds without issue, but should avoid climbing and machinery operation. (Tr. 279-87).

While an MRI taken in March 2013 showed minimal spondylolisthesis, degenerative osteoarthritic changes of the lumbar spine, and narrowing and sclerotic changes (Tr. 293), there is no indication in the medical record that these maladies resulted in significant functional limitations. Indeed, Caldwell's medical record from November 2013 reveals that he was again in "no acute distress," and the treatment session was instead focused on the treatment of problems like hypertension, fatigue, and sexual dysfunction. (Tr. 315). In Caldwell's favor is his prescription for Tramadol, a powerful narcotic pain reliever, though the medical record gives little indication as to why that drug was prescribed. (*Id.*). Even so, prescription drug treatment alone is modest compared to other potential treatments such as epidural steroid injections or surgery.

In contrast to these relatively mild medical findings, Caldwell's complaints of extreme pain, numbness, and limitation appear particularly stark. The ALJ supportably concluded that Caldwell exaggerated in asserting that his daily activities were limited to watching television, preparing frozen meals, using the phone and shopping in stores monthly. (Tr. 23, 235-39). The ALJ noted that Caldwell suffered from no muscle atrophy or other impairment which could corroborate such severely limited activities of daily living. (Tr. 23). The ALJ also properly concluded that there was little objective support for Caldwell's claim that he experiences hand numbness so severe that he cannot hold objects. (*Id*.). Likewise, the ALJ did not credit Caldwell's assertion that he could lift only five pounds (Tr. 240), which was unsupported by any medical record. (Tr. 23). Furthermore, the record indicates that in November 2013 Caldwell reported zero pain on a one to ten pain scale, indicating that his medication was either entirely successful in resolving his pain, or that he was not suffering from a malady that caused pain at that time. (*Id*.). Ironically, just one month later, in December 2013, Caldwell told the ALJ that he experienced pain so severe that it could not be accurately described on a scale of one to ten, but was instead an "11." (Tr. 59). This sort of gross inconsistency provides good reason to discount Caldwell's credibility.

The ALJ also properly found Caldwell's credibility lacking in several other areas. He noted that Caldwell continued to work part time, allegedly as a greeter at a dollar store. (Tr. 20). While this work did not rise to the level of substantial gainful activity, the ALJ properly concluded that it undercut Caldwell's credibility insofar as it demonstrated

26

his ability to complete at least some work. *See Miller v. Comm'r of Soc. Sec.*, 2013 WL 1705026 at *2 (6th Cir. 2013) (ALJ did not err in considering claimant's part-time work). Caldwell's ability to work part-time also calls into question his allegation that he cannot walk further than his porch without rest, and his assertion at the hearing that he could walk only ten to twenty steps. (Tr. 62, 240).

The ALJ likewise complied with his obligation to consider the factors listed in SSR 96-7p, including Caldwell's daily activities, pain, medication, and treatment. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); (Tr. 22). For instance, while Caldwell asserted at the hearing that his blood pressure medication caused dizziness (Tr. 235, 242), the ALJ noted that Caldwell consistently denied experiencing dizziness during his treatment sessions, and did not make use of a cane during a March 2013 treatment session. (Tr. 22, 23).

The ALJ properly evaluated Caldwell's claim, and no obvious cause for remand can be found. Therefore, I recommend that the Commissioner's decision should be affirmed.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Caldwell's Motion for Summary Judgment (Doc. 19) be **DENIED**, the Commissioner's Motion (Doc. 20) be **GRANTED**, and that this case be **AFFIRMED**.

27

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Caldwell v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection

28

No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 30, 2016                          S/ PATRICIA T. MORRIS
                                              Patricia T. Morris
                                              United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Drew Allen Caldwell at 5962 Seminole, Detroit, MI 48213.


Date: June 30, 2016                          By s/Kristen Krawczyk
                                             Case Manager